Our next case is number 181134 Goodson Holdings versus Titeflex Corporation Good morning, Your Honors, and may it please the Court. I think the earliest, easiest way to categorize this case is to conceive, as I did in the brief, of a highway carrying trucks with hazardous materials. One option for dealing with the danger posed by those trucks is to create additional lanes, hoping to disperse the traffic, and thereby lessen the probability of a wreck causing damage to the road or other vehicles. That is the approach which was taken by the prior Art. A different approach is to get the hazardous trucks off of the highway completely, putting them on an express separate lane, which is not without abilities to change lanes back into the main highway. That is the approach which was taken by Goodson in his patents. In electrical terms, the highway of adding lanes dissipates, spreads out a charge, an express separate lane divergence. I don't think your analogy here is going to carry today. Let's talk about the specifics of the prior Art here. And what's your contention is that there can't be this conduit wire that can't be touching or in close proximity to the tube here? Is that your contention? Yes, Your Honor. Because that would render the conductive layer of Yamani or Aoki or the conductive materials of Yamani as to be not parallel and not a shunt and not direct. So that is the problem. Doesn't the prior Art show close proximity? The prior Art does show proximity. That is exactly our position. In fact, not just proximity, but for example, in the Yamani patent, it expressly provides element five in the diagrams. A connector, a conductive connector. Okay, but doesn't your own specification show close proximity in an alternative embodiment? No, Your Honor, it does not. It is a direct, separate, it's parallel. The claims themselves say keeping the electricity off of the stainless tubing. It uses the word shunt. I mean, in every way I can conceive, it is not electrically proximate. It is not conducting. I think what your argument here is, and I don't mean to be redundant, but it's argumentative. And I say that because your argument is inconsistent with the claims. The claims don't provide for what you're saying. The claims seem to me to provide that even with the invention, even with the wire there, that the wire is not going to carry all the charge. The charge is still going to go to the conduit, even though it's minimal. But you're still going to have some charge on the conduit. At least that's what the claims say. Your Honor, I would respectfully disagree for two reasons. One is the fact, the word shunt, the fact that the claims say that the tubing doesn't carry electricity. Rather, it's carried by the conductive means, the word parallel, the word direct. All of those drive the conclusion that they are not conducting. You agreed to a construction of conductive means. That means, that appears to me to say both direct and indirect, meaning that the electrical contact can continue to exist with the invention in place. Well, Your Honor, that's the second response to your question earlier. That drives this argument here. Your Honor, I think we have to step back to electrical engineering and realize when you have two potential paths and one conductor is, for example, the conductive means is not of zero resistance. And likewise, the stainless steel tubing is not of infinite resistance. So, electrically speaking, if you've got a charge applied at either end of the connectors, there's certainly going to be some amount. And as Dr. Alcove explained in his declaration, recognition of that is in no way a concession that the electrical charge that causes damage is still going along the tubing. It is simply, in the claim of Goodson, a shunt without a contention. But your specification on column three, beginning about line 29, or I'm sorry, 33 or 34, says the majority of the current is carried by the conductive wire rather than the CFST. So, that suggests that some, perhaps close to a majority, could be carried by the tubing. Well, your Honor, respectfully, I would commend to the court to consider the appendices, pages 306 through 311. But answer my question about this reference in column three. Your Honor, those pages address that reference. And the explanation is that that is simply a recognition. If you have two elements, unless one is infinite and the other is zero resistance, there will be some de minimis current on the small one. When you say de minimis, it says a majority is carried by the wire, which suggests that a substantial amount could be carried by the tubing. Well, your Honor, if you look at the claims themselves, it says the current is carried by the conductor rather than the tubing, the stainless tubing. And also, the limits claim, so as to prevent damage. And if you do not isolate these, it does not prevent damage. So, let's say 48 percent is carried by the conduit and 52 percent is carried by the wire. How can that be a shunt? Your Honor, I would submit that's not a shunt. Well, it's not. No, I agree. No, I mean, what happens in the real world is that the CFST, the stainless tubing, will be carrying less than 99 percent. So then, are you conceding that the invention is not a shunt, does not shunt the power? No, your Honor, it certainly is a shunt. What I am conceding is that in the world, you will have some amount. The specification allows for the material or the pipe itself, the conduit pipe and the wire to carry charge. Your Honor, you have to, one, read it in connection with the limitation, which says the current is carried by the conductive matter, not the stainless steel tubing. So, in looking at that sentence from the specification, we should not lose sight of the limitation. Do you disagree with Judge Dykes' question that the conduit can carry a substantial amount of a charge? Maybe not the majority or above that, 48, 52? Your Honor, I do not believe I agree that they could carry a substantial portion, your Honor. The amount, again, given the conductivity of copper aluminum versus stainless is going to be 99 percent. Oh, is it 25, 75 percent? Oh, no, your Honor. We're talking literally just 99 percent versus one. This is not a matter of close or division or an extra line. Where do we get the 99 versus 1 percent from the specification? Well, your Honor, if you, one, again, if you look at the limitation, it says it's carried. Second, if you look at the type of material, the conductivity of the conducting means has to be better or greater than the conductivity of the CSST. If you use the word shunt, it connotes that. If you, all of the words that are used in direct. The only way that you get to the conclusion that the panel or the board made was to disregard those concepts. And clearly, Goodson is breaking with the prior art by saying that there is no communication between this conductive member and the stainless steel tubing. In Rivest, you had a conductive layer. That was distinguished by the examiner. In Yamine, you have conductive members with this element 5 that connect them electronically. And in Oki, you have the layer. Does Yamine also teach an embodiment where there's an insulating layer between the tubing and the conductor? Actually, when using the insulator, it either says use the item 5 to pierce between the two so you have an electrical connection or place the member actually on the interface of the insulating layer so that the conductive member is touching the CSST. It expressly requires some kind of electrical connection between the conductive member and the CSST. Likewise, you have the same. Where is that in Yamine? Your Honor, in Yamine, if you look at paragraphs, it's the appendix 3220. If you examine paragraphs 22 and 24, this talks about the conductive members and embodiments. Or if you look at paragraph 35, you will find the discussion regarding the conductor touching the tubing directly. If you could just show me a sentence, that would be great. Yes, Your Honor. Your Honor, if you're looking at the Oki. I'm looking at Yamine. Oh, Yamine, I'm sorry, Your Honor. I thought we were talking about you. Isn't Yamine the one that talks about an insulating layer between the conductor and the tubing? Corrugated stainless steel tubing? Yes, Your Honor. And if you look at the, I mean, paragraph 35 of Yamine, that's what I was referring to. I'm sorry, the appendix 3222. And you'll see in that paragraph, it describes the conductive members are in an interwoven pattern between the insulating cover and the tube body. In other words, the conductive members in Yamine and that embodiment are interwoven between the inner surface of the insulating layer and the CSST. They're touching the tubing. So that's why I say the first three embodiments, there's actually a structure. And then in this one, the fourth embodiment, you don't have a structure because the conductive members are actually touching. You keep saying in your brief that the prior art failed miserably. I don't see any site for that. What's the site for? Well, Your Honor, the testing that is described in the videos which we gave links to are testing of products which do not use this shunt or separate paths. And every one of those you'll see failures at levels far below an average life expectancy. Where is this in the record? Your Honor, Paige. I'm sorry, I'll have to cite you to my brief which in turn has the link. It doesn't have the site. I'm sorry? The brief keeps saying the prior art failed miserably, but it doesn't have a site. Well, there's a reference in Mr. Iko's, Dr. Iko's declaration. I would refer you to appendix 286. 286? Yes, Your Honor. Your Honor, I also want to... Where does it say that on 286? I'm sorry, I don't have that appendix with me, Your Honor. You don't have the appendix with you? Well, Your Honor, I don't have all 500 pages printed out, no, Your Honor. That is Dr. Alko's, Iko's... This volume that you submitted to the court, you didn't bring that with you? I have it on my laptop, yes, Your Honor. Well, so where is this on page 286? Yes, Your Honor. Well, I'm finding that, Your Honor, I also want to address very quickly the constitutional challenge to the IPR process. I acknowledge that... Oh, thank you. Counsel has favored me with that page. You should bring your appendix with you in hard copy. Yes, Your Honor. Thank you. Your Honor, on pages 285 and 286, paragraphs 35, 36, and 7 reference the testing. This is Dr. Iko's declaration, reference the testing. Where does it say the prior film? Well, Your Honor, what I'm suggesting is that the testing that's mentioned demonstrates that a configuration such as the prior art fails. If you're asking me, did we put a prior art piece of embodiment in a testing lab, to my knowledge, one doesn't exist. No, we haven't acquired a piece of tubing from Tokyo Gas and put that. The argument that we made below and make now is that that testing demonstrates that a configuration such as the... Is it your position that Yamane and Oki, they don't work for their intended purpose? Yes, they don't. Exactly. Because, again, we're going back to the language, but they're not a shunt. On the constitutional question, the arguments that you're raising now were not in your opening brief, correct? Your Honor, I would disagree. We, in the opening brief, raised the Fifth Amendment, Seventh Amendment, and Article III challenge. You don't raise the takings issue in the opening brief? Yes, sir, in the Fifth Amendment. Where? Okay. Your Honor, in the, on page 58 of the brief, we raised the due process challenge. Is our position that that encompasses the taking? And then after the oil states case was delivered, we expanded... But it's not a retroactivity argument, right? Well, Your Honor, I would submit that the due process argument does encompass the retroactive taking. Where do you argue retroactivity in the opening brief? Your Honor, I would submit that's assumed in this due process challenge. So you didn't say the word retroactive in the opening brief? That is correct, Your Honor. You didn't say the word takings in the opening brief? That is correct, Your Honor. We raised... You said the word due process. The term due process. Yes, that is absolutely correct, Your Honor. And then in support of your due process argument, you're claiming things like the whole structure of the IPR process is somehow biased. Your Honor, not just the structure, but the procedures used on a retroactive basis take away the benefit of the bargain of the original applicant. Oh, where does it say that in the blue brief? Your Honor, in the... Blue brief? No, the blue brief, the opening brief. No, Your Honor, I concede, as I thought I did a while ago, we did not use the word retroactive with regard to the opening brief. Right. So we're investigating right now, what did you actually preserve in your opening brief? Your Honor, we preserved the due process challenge. Okay. And I submitted... Which is separate, as I understand it, from a takings claim based on a retroactive application of the AIA to your pre-AIA patent. Well, Your Honor, I think that that is encompassed with that. Your Honor, I would close by asking... Okay, I think we're out of time. We'll give you two minutes for rebuttal. Yes, Your Honor. Mr. Day. Thank you. Good morning, Your Honors, and may it please the Court. Let me start by talking about some of the issues that you've raised, and in particular where Yamane discloses an embodiment where there is no touching, there's no direct connection between the external conductor and the tubing. So if you look in Yamane, paragraphs 22 and 29 both talk about... What page? Sorry. These are on page... Joint Appendix 3-2-2-0 and 3-2-2-1. At the end of paragraph 22, it says, if the conductive members four are provided in the interior or the outer face of the insulating cover layer, however, the conductive members may be connected directly to the connecting joint. What that means is the wire, if it's in the middle of the insulated layer or on the outside of it, in one embodiment, you can connect that wire directly to the connector at the end of the tubing. Then if you go to paragraph 29, it says, if the conductive member is connected that way, there's without the need for a separate conductive means. What that's saying is if you do that, you don't need this little connector five that Council mentioned, that in some embodiments does connect this external wire to the tubing. So there's an explicit disclosure here of an embodiment where the external conductor does not touch the tubing, and that's exactly what the board below found. That's significant because the board correctly construed the claims and did not adopt the no-touching limitation that Goodson would like to graft onto the claims, and on that basis found that the prior art discloses all the elements of the challenged claims. But it also went on to say both Yamane and Okai disclose embodiments where there is no touching, where the wire is separate from the tube body, they're separated by an insulating layer. Okai talks about that at Joint Appendix 3239. There's proximity but no touching, but then that leads to the question of whether the claims here cover a close proximity embodiment. Yeah, this was raised below. There were actually three limitations that Goodson wanted to apply. One was no touching. A second was no close contact, which I think is the no close proximity. I would suggest, Your Honor, if you look at figures 6A and 6B, the two embodiments in the Goodson patents, they show touching in the figure 7B embodiment where the mesh appears. 6B? Figure 6B. You're saying it shows touching? Yeah, it shows that the mesh is up against the tubing and the tubing appears to be protruding through the mesh. Certainly if that's what it's showing that it's touching. The board didn't make that finding, right? The board did. I believe you're right. Okay. So in addition, but what the board did find, what the board noted was that the specification talks about, and this is at column 3, 44 through 49, where it talks about where you have an arc to the sidewall. Can you break down this sentence? Because I found it vague and hard to follow, hard to track. Sure. What it's saying is when using a mesh-type shield, this is at line 39 of column 3, if the CSST or appliance connector receives an electrical charge from arcing to the sidewalls, I assume that's the sidewalls of the tube, the mesh serves as a current shunt and thus both shunts the current and causes the charge on the actual CSST or appliance connector wall to be dissipated over a larger area. Can you explain what this is trying to describe? What's the situation that's going on here? The situation is in the Goodson patents it talks about a number of different ways that lightning can impact tubing. And one way to have is tubing that's close to something that becomes electrified from the lightning and the current arcs through the air from that electrified pipe or appliance or whatever it is over to the sidewall of the tubing. Through the air. Through the air. It's an arcing from one thing to another as opposed to coming in at one end of the tubing and running through it. This is arcing over to the sidewall. And what this description is talking about is when that happens, if you have a mesh, the mesh is going to divert most of the current. The Goodson patents say a majority of the current. But also some of the current is going to be dispersed out because you're using a mesh and it will be dispersed out onto the tubing. It will be less than a majority obviously. There's no support to suggest that it's 1% or something like that. This is the 6B embodiment? Yes. Correct, Your Honor. And that's what this language is talking about, the 6B embodiment. Back to my point about close proximity. It looks a lot like the description in YAMI, right? Exactly, Your Honor. And 6A looks very much like the IMANE embodiment with the external wire. 6B looks just like the OKAI embodiment where you've got a mesh surrounding the tubing. So there's really, frankly, there's no air between, there's no space between the Goodson invention, which is putting a conductor on the outside of the tubing, and what was already disclosed by the prior art, IMANE and OKAI. And that's whether you accept this no-touching limitation or not. So in the end, the board rejected that but went on to say, even if I accepted this, a no-touching or a no-close contact, or the board said even if I accepted a no-resin limitation, which would be made completely from whole cloth because there's no basis for that in the patent, the prior art discloses every limitation anyway. So under either construction before you today, the result is the same. The patents are obvious. The claims are obvious in light of the prior art. Let me briefly, well, let me touch on the testing evidence. There was no evidence that the prior art we've cited was tested and failed under any circumstances. And there's nothing in the record today about any testing of any prior art product. So when we get to secondary considerations and this notion that OKAI and Yamane don't work, it's just a lawyer argument. There's no support for that. And finally, let me just touch on the constitutional arguments. I'm not going to belabor it because we agree that neither takings nor retroactivity was discussed in the opening brief. I think if you got to the merits, you would reject it. The Patlex case we cite in our opposition addressed the very same issue in connection with the patent reexamination statute and explained that that statute did not violate due process because it was applied retroactively. I think the same analysis would apply here if it had been raised appropriately. But frankly, it just was not. Do you have any questions? OK. Thank you. Thank you, Your Honor.  Thank you, Your Honor. I won't repeat because anything I would say in rebuttal would be a repetition. You said it for two minutes. Thank you, Your Honor. I will not repeat what we discussed in my opening argument. That's exactly what I would say in response. It's simply a difference of what these structures entail. Likewise, I think I've said what I could on the constitutional challenge. I would like to spend just a second to ask that, of course, we ask this court to reverse and dismiss the IPR. In the alternative, we would at least ask the court to remand the matter back to the board to apply the Phillips standard for claim construction rather than the broadest reasonable interpretation. Why? Pardon? Why? Well, Your Honor, the... I thought the effective date of the new regulation that's going into effect is only for IPRs that are filed after the effective date. That is correct. In fact, the board specifically acknowledged the question of whether to apply retroactively and announced that they would not apply it. What I'm asking this court to do is overrule that decision and remand it for the reasons that were laid out in the briefing, the infirmities of which are many of the IPR process include a different standard for claim construction. Real quickly, what would change then? Well, Your Honor, we would submit... You conceded a very important element of the claim construction. I'm sorry? You conceded a very important element of the claim construction. What would change under the Phillips standard? Well, Your Honor, I'm sorry, I don't know what you mean by conceded. I don't think I conceded a claim construction. But what would change is, one, the board repeatedly said they were using the broadest claim construction. And second, I think by going through plain and ordinary meaning, you would find the differences then that I have been urging today between what Goodson claims, again, the divergence and the dissipation which was the approach taken by the prior art. Thank you, Your Honors. Okay, thank you. Thank both counsel in case it's submitted.